ANNA HAEUSSLER AND LOUIS HAEUSSLER, PLAINTIFFS,
v. CONSOLIDATED STONE AND SAND COMPANY, A
CORPORATION; AND IN THE ALTERNATIVE, GREAT
NOTCH CORPORATION AND FRANKLIN CONTRACT-
ING COMPANY, CORPORATIONS, DEFENDANTS.

Argued October 7 and 8, 1924—Decided February 6, 1925.

**Negligence—Injury to Another Through Being Struck by Stone
Flying From a Blast—Injury Occurred While Plaintiff was
Sitting Under Tree, Having Been Walking on the Highway—
Contributory Negligence Not Established—Excessive Dam-
ages Not Sustained.**

On defendants' rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER
and KATZENBACH.

For the plaintiffs, *Ward & McGinnis* and *Isadore Rabino-
witz* (*Peter J. McGinnis*, of counsel.)

For the defendants, *Kellogg & Chance*.

PER CURIAM.

This case is before us on a defendant's rule to show cause.
The action was instituted by Anna Haeussler and Louis
Haeussler, her husband, against the Consolidated Stone and
Sand Company, Great Notch Corporation and Franklin Con-
tracting Company to recover damages sustained by an
injury to Anna Haeussler by being struck by a stone
thrown by a blast from a quarry. After the drawing
of the jury the suit was discontinued against the Great Notch
Corporation and the Franklin Contracting Company, and
proceeded against the Consolidated Sand and Stone Com-
pany as the sole defendant. The case was submitted to the
jury, which returned a verdict of $11,000 in favor of Anna
Haeussler and $1,000 in favor of Louis Haeussler. The evi-

dence adduced at the trial shows that on August 3d, 1923, Anna Haeussler, with her son and a friend, left her home. They walked upon the public highway. Mrs. Haeussler seated herself under a dead tree. While seated there a blast from a quarry threw a stone about six inches in diameter against the hand of Mrs. Haeussler, injuring it in such a way as to cause her to lose about eighty per cent. of its use. There was evidence that the stone came from the defendant's quarry. The plaintiffs claimed negligence in the blasting. This the defendant denied, and alleged contributory negligence on the part of Mrs. Haeussler in going to, and remaining at, a place where a reasonable prudent person should have known that there was liability to injury.

The point most strenuously insisted upon at the argument and in the brief submitted for the defendant is that the trial judge erroneously charged the jury, in that he assumed as proven certain facts which should have been left for the determination of the jury. Emphasis is laid upon the statement that the trial judge said that Anna Haeussler was seated under a tree at the time she was hit by the stone. This contention seems to us to be without merit. The trial judge told the jury that if he undertook to quote any testimony, and his quotation did not coincide with the recollection of the jury, that they must rely upon their recollection of the evidence in the case. The jury were therefore not deprived of passing upon the questions of fact involved in the controversy.

The next point made by the defendant is that the trial judge admitted illegal evidence. Under this head it is first argued that the trial judge should not have allowed a witness by the name of William Shaw, testifying for the plaintiff, to answer the following question: "Now, don't you know of any number of occasions a blast from your quarry has thrown rock and stone in that field between his house and the roadway where that tree was?" Shaw was an expert witness. This question was asked upon cross-examination. It seems to us proper as testing the knowledge of the witness upon the subject upon which he was testifying as an expert.

But assuming the question to be improper, the answer which was "I do not," was harmless to the defendant.

The next point argued relates to a question asked Arthur Johnson, a witness for the defendant, upon cross-examination. The question was: "Assuming that the plaintiff was in the position underneath the tree indicated on the map, in the neighborhood of the lane of which you testified you had knowledge, and assuming that she was injured by a stone that was thrown from a blast from the Consolidated quarry, to what would you attribute that?" The answer to this question, if it be assumed that the question was improper, was harmless to the defendant, as the witness testified that he did not know what would throw the stone that distance.

The next point argued deals with an objection to the following question: "I see. That would be equally true, would it not, if as a result of a blast in the Consolidated quarry property a stone were thrown from the place where the blast occurred to the place where the plaintiff was sitting under the tree on the Clove road at the spot indicated on the map as A." The objection to the question is that it was too indefinate as to the size, shape and dimensions of the stone mentioned in the question. This question was asked on cross-examination of Arthur Johnson, an expert witness. The dimensions of the stone had been given.  We think the jury had in mind no other stone than that which was said to have struck Mrs. Haeussler when the question was asked, so that the omission to embody the dimension of the stone in the question resulted in no harm to the defendant.

The defendant questions the propriety of a question asked Stanley Meyers, an expert witness, called by the plaintiff on rebuttal. The question was: "A mud cap such as was put off by you on the 3d of August, 1923, at the place indicated on these different pictures, P-9, P-10 and P-11, indicated in the Great Notch quarry at the places marked by you on the picture as M; could any stone, by any possibility, have come from that blast—I mean in the direction of the tree we have mentioned here?" The objection to the question is that it

permitted an expert to give an opinion upon a matter which was not the subject of an expert opinion, and thereby invaded the province of the jury. We think the information sought to be elicited by this question was a proper subject for an expert opinion. It is akin to the line of testimony considered and approved in the case of *Alcott* v. *Public Service Corporation*, 78 *N. J. L.* 482.

The defendant next argues that the trial judge erroneously refused to strike out illegal evidence, in that he refused to strike out the answer, "There was only one blast made." The answer, it is true, was not responsive to the question. To permit the answer to stand, however, did the defendant no harm, as the same witness had previously testified that there was but one blast.

Counsel for the defendant next argue that the verdict is against the weight of the evidence. It seems to us that, not only is the verdict not against the weight of the evidence, but it fully sustains the verdict.

The final ground urged for a new trial is that the damages are excessive. It has already been stated that the plaintiff's right hand was practically rendered useless by the accident. Eighty per cent. of its use was lost. The plaintiff also sustained other injuries. She had been working steadily as a weaver, earning $17.50 a week. The accident made it impossible for her to continue this employment during the remainder of her life. The defendant goes into a long computation that the verdict, if compounded for the probable extent of the plaintiff's life, would be more than the wages which Mrs. Haeussler could earn during this period, assuming that she was employed every working day at the wages which she had been receiving.

We know of no rule that justifies such a method of determining whether damages awarded are excessive. A plaintiff is under no obligation to invest and compound the interest received upon the money obtained as the result of a suit for damages for personal injuries. It is to be expected that the money, in whole or in part, will be used for the care and

support of the person injured.  The defendant overlooks the pain and suffering which Mrs. Haeussler must have had and for which she was entitled to be compensated.  A shriveled hand and wrist is a mortification, especially to a young woman such as Mrs. Haeussler was.  She is entitled to compensation for the mortification.  Such an injury also deprives one of much of the enjoyment of life.  For this deprivation a person is entitled to damages.

We do not consider the verdict excessive as to Mrs. Haeussler.  Neither do we consider the verdict of $1,000 awarded to Mr. Haeussler excessive.  While his proven expenses do not amount to this sum, there are other elements which enter into such a verdict which makes the amount awarded to Mr. Haeussler seem moderate.

The rule to show cause is discharged, with costs.