ANTHONY KASISKI, BY NEXT FRIEND, JOHN KASISKI, AND JOHN KASISKI, INDIVIDUALLY, PLAINTIFFS, v. CENTRAL JERSEY POWER AND LIGHT COMPANY AND JERSEY CENTRAL POWER AND LIGHT COMPANY, DEFENDANTS.

Decided February 16, 1926.

**Negligence—Injury to Infant Resulting From Contact With Electric Light Wire—Facts Showed That Wire Had Been Broken and Hanging in Street at Least Two Hours Before Accident —Motion to Nonsuit was Properly Denied—There Being Prima Facie Evidence of Negligence and Nothing to Exhonerate Defendant, Case Should go to Jury, as it Did— Verdict of $7,500 for Infant and $2,375 for Father, Considering Nature of Injury and Youth of Plaintiff, Not Excessive.**

On defendant's rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices KALISCH and CAMPBELL.

For the rule, *Frank G. Turner.*

*Contra, Kalisch & Kalisch (Harry Kalisch,* of counsel).

PER CURIAM.

Anthony Kasiski, a minor, by his father, John Kasiski, as his next friend, and John Kasiski, individually, brought an action against the Central Jersey Power and Light Company and the Jersey Central Power and Light Corporation, in which action the minor sought to recover damages for personal injuries sustained by him, and the father sought to recover for loss of the minor's services and prospective earnings, and for moneys expended for surgical and medical attendance incurred on behalf of his son. The case was tried at the Morris Circuit and resulted in a verdict of $7,500 in favor of the infant plaintiff, and in a verdict in favor of the father for the sum of $2,375 against the Jersey Central Power and Light Company, the plaintiffs having submitted

to a judgment of nonsuit as to Central Jersey Power and Light Company, which company was joined as a co-defendant in the action. The matter is before us on a rule to show cause obtained by the Jersey Central Power and Light Company why a new trial should not be granted. The reasons assigned upon this application are—

1. Because the trial court erroneously refused to order a judgment of nonsuit in favor of the Central Jersey Power and Light Company and against the plaintiffs. 2. Because the trial court refused to direct a verdict for the defendant, the Central Jersey Power and Light Company. 3. Because the verdicts are contrary to law. 4. In that the verdicts are contrary to the charge of the court. 5. That the verdicts are excessive. 6. Because the verdicts are against the weight of the evidence. 7. That the verdicts are contrary to the law of the case. The facts of the case, as disclosed by the proof, are, briefly, these: The infant plaintiff, five years of age, was sent on an errand by his mother, and shortly afterwards was found lying on the ground in Mt. Pleasant avenue, a public highway in Whippany, in Morris county, directly underneath and in contact with the defendant's broken electric light wire which was hanging and dangling down into the street, and which was carrying a deadly current of two thousand three hundred volts. According to the testimony of a witness who was on his way to work at seven o'clock in the morning, two hours before the infant plaintiff met with his injury, he saw the electric wire hanging down and dangling in the highway, and, among other things testified to by him, he says: "Oh, I would not have noticed the wire, only I saw the smoke; it was swinging around; everytime it would strike the grass and stuff there it would burn and fire would fly out of it. That's the way I came to notice it." How long the wire had been down before the witness noticed it is not disclosed by the testimony. As the case stood when the plaintiff closed his testimony the situation was, that an electric light wire, belonging to and under the control and management of the defendant company and carrying a deadly current of electricity, a menace to the lives

of those coming in contact with it, is found broken and swinging from the company's electric pole, to and fro, on the public highway, and had been doing so for at least two hours before the accident to the minor plaintiff. These facts of themselves bespoke negligence on part of the defendant, and were properly within the application of the doctrine of *res ipsa loquitur*. The motion for a nonsuit was properly denied. There being a *prima facie* case of negligence of the defendant made out, we find nothing in the testimony adduced by the defendant which exonerated it, as a matter of law, from liability, and which constituted a legal bar to the submission of the facts of the case to the decision of the jury, and, therefore, the motion for a direction of a verdict for the defendant, at the close of the entire case, was rightly denied. The facts of this case are controlled by *Newark Electric Co.* v. *Ruddy*, 62 *N. J. L.* 505; affirmed by Court of Errors and Appeals, 63 *Id.* 357.

Reasons three and four, as well as reason six, are without merit. The fifth reason argued is that the verdicts are excessive. We do not think so. The electric shock which passed through the lad's body rendered him unconscious. Dr. McCormack testified that when he first looked at the boy he thought he was dead; that upon examination it was almost impossible to feel his pulse, and his respiration had got down to almost nothing. There "was a burn in his right hand extending through the whole palm. The index finger was burned right in half. His other finger was burned right through the center. The other fingers were all burned. This was burned right through to the bone, half way off. And then he had a burn right up here on the upper side of his elbow about two inches in diameter. He had another burn down here on his right buttock about the same size." According to the testimony of the surgeon the right hand is from sixty to seventy-five per cent. impaired in usefulness. The two important fingers of the hand are rendered absolutely useless. Apart from the pain and anguish that the lad suffered from the painful injuries and from the limited use of his hand, the jury could properly take into consideration

in estimating his damages the impairment of his ability to enter into and enjoy those boyhood games and pastimes to the full extent as his playmates; that his deformed and injured hand will in a great measure limit his choice of a vocation, and as a consequence diminish his earning power; that this condition will continue through life. Now, as to the father, he is entitled to the earnings of his son during the latter's minority, and it is quite obvious that for that reason that his son will be limited in his choice of a vocation and be confined to select such work as can be efficiently performed with the physically impaired right hand, and thus the chances of his employment and amount of awages earned will be lessened and impaired. It is only where it clearly appears that the verdict is the result of partiality, mistake, prejudice or passion on part of the jury that a court is warranted to disturb it.

The rule to show cause is discharged, with costs.